OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Findlay/Hancock County Bar Association v. Higgins.
[Cite as Findlay/Hancock Cty. Bar Assn. v. Higgins
(1994),      Ohio St.3d     .]
Attorneys at law -- Misconduct -- Public repirmand -- Multiple
    employment with a conflict of interest.
    (No. 93-2205 -- Submitted December 15, 1993 -- Decided March 30, 1994.)

On Certified Report by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 92-69.

In a complaint filed on December 10, 1992, the relator, Findlay/Hancock County Bar Association, charged that respondent, Patterson W. Higgins of Findlay, Attorney Registration No. 0013788, had violated DR 2-110(A)(2) (unreasonably withdrawing from employment) and 5-105(multiple employment with a conflict of interest). Respondent filed an answer admitting some allegations and denying others.

A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") held a hearing on the matter on June 23, 1993. The complaint, respondent's answer, and evidence at the hearing established that as to Count I, respondent undertook in December 1990 to represent Gregg Frazier in contesting a traffic violation. Later, respondent withdrew from that representation. However, the panel found respondent's withdrawal neither prejudiced his client's legal rights nor violated DR 2-110(A)(2).

Count II involved a conflict of interest when respondent represented a married couple, Alice and Almon Thompson, and Almon's former employer, Millstream Building Systems, Inc. In April 1989, Almon filed a workers' compensation claim after he suffered a heart attack in March 1989 while working for Millstream. Millstream certified the claim as valid, and Thompson returned to his job at Millstream in May 1989. Attorney Gerald L. King represented Almon in pursuing that workers' compensation claim.

Because of financial difficulties, Alice Thompson consulted respondent, and respondent filed a Chapter 13 (consolidation) bankruptcy petition on the Thompsons' behalf in June 1991. In October, respondent filed to convert that action

to a Chapter 7 (liquidation) proceeding. In January 1992, the Diamond Savings and Loan Company, which held a mortgage on the Thompson home, filed a foreclosure action. On behalf of the Thompsons, respondent filed an answer asserting a bankruptcy defense to preclude any deficiency judgment in the foreclosure action. In February 1992, respondent obtained a discharge in bankruptcy for the Thompsons. In May, the Thompsons moved out of their home. In June 1992, respondent wrote to the Thompsons about the foreclosure, and in July he signed, on their behalf, a judgment entry confirming the sale.

Also in February 1992, attorney King advised the Thompsons that a tentative Bureau of Workers' Compensation order had found Almon Thompson entitled to an eighty percent permanent partial disability award. That same month, Millstream discharged Thompson from his employment shortly after receiving notice of the bureau's tentative order. In May 1992, Millstream hired respondent to contest the bureau's order, and respondent argued at the May hearing that Thompson should not receive any award. Respondent contended Thompson's heart attack was caused by his age, life style, weight and smoking, and was not incident to his employment. In September 1992, respondent withdrew as Millstream's counsel after a grievance had been filed.

At the panel hearing, the Thompsons testified that they had discussed the pending workers' compensation claim with respondent at least three times, including once when respondent drove them from Findlay to Toledo. However, respondent did not recall discussing the claim with the Thompsons. Respondent testified he had thought his representation of the Thompsons had already ended when he appeared for Millstream at the May 1992 hearing. Almon Thompson never consented to respondent's representing Millstream.

The panel concluded that respondent had violated DR 5-105 in representing Millstream against Almon Thompson, without securing Thompson's consent to that representation. Although relator recommended a six-month suspension, the panel recommended a public reprimand. The board adopted the panel's findings, conclusions of law, and recommendation, and further recommended that costs of the proceedings be taxed against respondent.

Bernard K. Bauer and Robert B. Hollister, for relator.
Michael Jilek, for respondent.

Per Curiam. We agree with the board's findings and recommendation. Accordingly, we order that respondent be publicly reprimanded. Costs taxed to respondent.

Judgment accordingly.

Moyer, C.J., A.W. Sweeney, Douglas, Wright and Resnick, JJ., concur.
F.E. Sweeney, J., dissents and would suspend respondent from the practice of law for six months.
Pfeifer, J., dissents and would suspend respondent from the practice of law for six months, but would stay the suspension and place respondent on probation.